2002 UT App 83

**Gail Lynne ELMAN, Respondent and Appellant,**

v.

**Stanley C. ELMAN, Petitioner and Appellee.**

No. 20010145–CA.

Court of Appeals of Utah.

March 21, 2002.

---

Ellen Maycock, Kruse Landa & Maycock, Salt Lake City, for Petitioner.

Bert L. Dart, Dart, Adamsondonovan & Hansen, Salt Lake City, for Respondent.

Before JACKSON, P.J., and BILLINGS, Associate P.J., and ORME, J.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 Stanley C. Elman (Husband) appeals from a decree of divorce. He maintains the trial court erred in the property division. Gail Lynne Elman (Wife) cross appeals the property division and seeks attorney fees on appeal. We affirm and remand for a determination of reasonable attorney fees due Wife on appeal.

## BACKGROUND

¶ 2 After thirteen years of marriage, Wife filed for divorce. Following a trial, the trial court determined the marital estate had a net value of $3,421,045. The court awarded each party assets valued at approximately one-half of that amount.

¶ 3 Prior to the marriage, Husband acquired interests in four family real estate partnerships. At the time of the marriage, Husband's father managed the partnerships, assisted by a property management firm. Husband was employed as a commercial property manager for Transamerica Realty (Transamerica) in California. Wife also worked in property management until late 1991 or early 1992, when the parties jointly decided she would not work outside of the home.

¶ 4 In 1993, the parties moved to Park City, Utah. Husband maintained his employment with Transamerica and regularly commuted to California. Although no longer employed, Wife actively managed the parties' marital property. She secured the land for, and was in charge of, building the parties' Park City home. The home increased in value from $685,000 to over $1,000,000 at the time of trial. Additionally, Wife located, sold, and traded other marital properties. In particular, she was involved in the acquisition of a Montana ranch, which increased in value by approximately $422,000 at the time of trial; a Park City lot that sold for a $30,000 profit; and a lot, valued at $895,000, which she traded for a lot in the Colony at the Canyons (Colony Lot), valued at $1,200,000 at the time of trial.

¶ 5 After Husband's father died in 1995, Husband managed the partnerships, assisted with daily management by the property management firm. In January 1998, Husband assumed plenary management of the partnerships and left his Transamerica employment where he had been earning approximately $87,000 a year. The partnerships' holdings are extensive, requiring Husband to devote a substantial amount of his time to their management.[1] In 1999, Husband earned over $300,000 from the partnerships.

---

1. Eden Roc consists of five buildings, each with approximately 20,000 square feet. Elman Ltd. consists of five buildings with approximately 60,000 combined square feet. Fulton Ltd. consisted of three buildings, one of which was sold in 2000, leaving two buildings with approximately 60,000 combined square feet. Clementine Ltd. consists of two buildings with approximately 20,000 combined square feet. The buildings were almost completely rented at the time of trial.

¶ 6 Throughout the marriage, Husband maintained separate accounts for the partnerships. In 1998, he transferred one-third of the Elman Ltd. partnership to Wife. At trial, the parties stipulated that this one-third interest was marital property.

¶ 7 Husband's partnership interests substantially appreciated in value during the marriage. At trial, Wife sought a share of that appreciation. The trial court determined that the partnership interests were premarital property. The court also determined that Husband had not commingled the partnership assets and Wife had not directly enhanced or protected the assets in a meaningful way. However, the trial court found that Wife was a very active partner in managing and enhancing the parties' marital property, particularly during the latter years, when Husband's management of the partnerships substantially increased. The court further found Wife freed Husband to manage the partnerships because of the responsibilities she assumed. Thus, the court concluded Wife was entitled to a small share of marital appreciation derived from their joint, although distinct, efforts.

¶ 8 In calculating the marital appreciation, the trial court began with the appreciation on Husband's partnership interests during the marriage, $4,556,215. The trial court subtracted a reasonable return, as calculated by Wife's expert, and prorated the remaining appreciation, based on the years of Husband's most active partnership management. The court allowed one year for the two years of Husband's overall management following his father's death, and one year each for the two years of plenary management, for a total of three years over the parties' thirteen year marriage, resulting in $504,069 in marital appreciation.[2] The trial court awarded Wife marital property offsetting the marital ap-

preciation and awarded Husband his partnership interests free of any claim by Wife.

¶ 9 At the time of trial, the parties' Park City home had first and second mortgages. Additionally, a trust deed created a $250,000 lien (the Elman Trust Loan). In 1998 or 1999, in conjunction with the sale of their California home, the parties paid $50,000 to reduce the principal of the Elman Trust Loan. No other principal payments have been made. The trust deed note bears interest at a rate of 9% per annum. At trial, Husband asserted that with interest, the amount due the Elman Trust is $423,000.

¶ 10 In 1997, over two years prior to filing for divorce, Wife filed for bankruptcy. Husband helped Wife complete the bankruptcy schedules. The schedules list the Elman Trust Loan as a secured obligation.[3]

¶ 11 At trial, Wife testified that after she filed for bankruptcy, she asked Husband if they could afford to buy the Colony Lot to build a new home and Husband responded that the Elman Trust Loan was a gift. Husband denied making this statement. Husband did not list the Elman Trust Loan as a debt on financial statements until Wife filed for bankruptcy.

¶ 12 The trial court found the Park City home had a value of $1,000,000. The court then subtracted the first and second mortgages and a 6% sales commission, but not the Elman Trust Loan, leaving a net equity of $320,293.

¶ 13 Prior to trial, Husband disclosed an interest in a defined benefit pension plan (the Plan). Husband, his mother, and his sister have interests in the Plan. The parties stipulated that the present value of Husband's interest is $345,000.

---

2. The trial court calculated the appreciation as follows:

Value of [Husband's] interest in the premarital partnerships as of December 20, 1989—$1,282,154,

Value of [Husband's] interest in the premarital partnerships as of February, 2000—$5,838,371[,]

Increase—$4,556,215 ( [Wife's] exhibit 57),

10% ... return on 12/89 value[ ]—$2,096,654,

Increase in excess of 10% return—$2,191,606,

Value of the marital interest in the premarital partnerships—(3/13 × $2,191,606)—$504,069.

3. The bankruptcy trustee has sued the Elman Trust seeking to avoid the trust's lien as a fraudulent conveyance.

¶ 14 At trial, Wife's expert testified that the Plan is administered by Elman Properties, Inc. (the Corporation), which has assets worth approximately $2,000,000. The expert further testified that the Plan may be overfunded. After Husband testified that he owns a 50% interest in the Corporation, Wife asserted she was entitled to an equal share of Husband's stock in the Corporation.

¶ 15 In the property division, the trial court awarded Wife $345,000 in property offsetting the present value of Husband's interest in the Plan. The trial court refused to award Wife any interest in the Corporation, finding there was no persuasive evidence as to the value of the Corporation beyond the Plan.

## ISSUES AND STANDARDS OF REVIEW

¶ 16 Husband argues: (1) The trial court erred in determining that a portion of the appreciation on his premarital partnership interests is marital property subject to equitable division; (2) the evidence does not support the trial court's finding as to the amount of appreciation on Husband's partnership interests; and (3) the trial court erred in not charging the Park City home equity with the Elman Trust Loan. In her cross appeal Wife argues the trial court erred in refusing to award her an equal share of Husband's interest in the Corporation.

¶ 17 "A trial court has considerable discretion concerning property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity." *Schaumberg v. Schaumberg*, 875 P.2d 598, 602 (Utah Ct. App.1994). We disturb a trial court's property division and valuation "only when there is 'a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderates against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.'" *Id.* (quoting *Noble v. Noble*, 761 P.2d 1369, 1373 (Utah 1988)).

## ANALYSIS

### I. Appreciation on Premarital Property

#### A. Propriety of Award

¶ 18 Husband argues the trial court erred in awarding Wife a portion of the appreciation on Husband's partnership interests. In distributing property in divorce proceedings, trial courts are first required to properly categorize the parties' property as marital or separate. *See, e.g., Kelley v. Kelley*, 2000 UT App 236, ¶ 24, 9 P.3d 171. Generally, trial courts are also required to award premarital property, and appreciation on that property, to the spouse who brought the property into the marriage. *See Dunn v. Dunn*, 802 P.2d 1314, 1320 (Utah Ct.App. 1990); *see also Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988).

¶ 19 However, separate property is not "totally beyond [a] court's reach in an equitable property division." *Burt v. Burt*, 799 P.2d 1166, 1169 (Utah Ct.App.1990). The court may award the separate property of one spouse to the other spouse in " 'extraordinary situations where equity so demands.'" *Id.* (quoting *Mortensen*, 760 P.2d at 308); *see also Rappleye v. Rappleye*, 855 P.2d 260, 263 (Utah Ct.App.1993) (" 'Exceptions to this general rule include whether … the distribution achieves a fair, just, and equitable result.'" (quoting *Dunn*, 802 P.2d at 1320)).

¶ 20 In the present case, the trial court properly categorized Husband's partnership interests as separate property. The court then determined that Husband had not commingled the partnership assets and Wife had not directly enhanced their value.[4] However, the trial court found that Wife was very active in managing the marital property, particularly during the latter years, when Husband's role in managing the partnership assets consumed his full-time attention. The court further found Wife freed Husband to engage in activities benefitting his premarital property because of the unusual responsibilities she assumed. Thus, the court concluded equity required that Wife be awarded a small

---

4. At trial, the parties stipulated that the interest in Elman Ltd. that Husband transferred to Wife during the marriage was marital property. The trial court appropriately accounted for this interest in the property division.

share of the appreciation on Husband's partnership interests, derived from the parties' joint, although distinct, efforts. In calculating the award, the court subtracted a reasonable rate of return, then prorated the remaining appreciation based only on the years of Husband's most active partnership management.

¶ 21 Husband argues there is no basis in Utah law for this award. Specifically, he maintains that once the trial court determined the partnership interests were Husband's separate property, the partnership assets had not been commingled, and Wife had not directly enhanced the value of the partnership assets, the court was required to award all of the appreciation to Husband. *See Mortensen,* 760 P.2d at 308.

¶ 22 We disagree with Husband's assertion that the trial court's award is entirely without support in our case law. The trial court appropriately relied on our reasoning in *Dunn.* In *Dunn,* the wife, similar to Wife in the present case, resigned from her employment during the marriage to have time to travel with the husband, perform secretarial and bookkeeping for his corporation, entertain his associates, run errands, manage household accounts, run the house, and coordinate the construction of the parties' home. *See Dunn,* 802 P.2d at 1316. In the divorce proceedings, the wife sought an interest in the tangible assets of the husband's corporation. *See id.* at 1318. The trial court denied her the same, concluding that the assets were the husband's separate property. *See id.*

¶ 23 We held the trial court exceeded its discretion. *See id.* We emphasized that the wife assumed the sole responsibility of running the household and managing household accounts while the husband worked sixty to seventy hours per week for the corporation. *See id.* She was left without companionship and domestic contributions during those hours. *See id.* While she was not his partner in the business of the corporation, she

was his partner in the business of marriage. *See id.* Because her efforts were necessary to the growth of his corporation, the wife was entitled to a fair share of the corporation's assets. *See id.*

¶ 24 In the present case, Husband left his lucrative employment with Transamerica to manage the family partnerships, which were premarital property. The partnership holdings are extensive, requiring him to devote significant time to their management.[5] While Husband was growing his partnership assets, Wife not only managed the household, but also grew the parties' marital properties. She secured the land for and was in charge of building the parties' Park City home. The home increased in value from $685,000 to over $1,000,000 at the time of trial. She was also involved in the acquisition of a Montana ranch, which increased in value by approximately $422,000 at the time of trial; a Park City lot that sold for a $30,000 profit; and a lot, valued at $895,000, which she traded for the Colony Lot, valued at $1,200,000 at the time of trial. Additionally, by joint agreement, Wife left her private sector employment to actively manage the household. Wife freed Husband to engage in partnership managing activities because of the responsibilities she assumed. Husband was awarded 50% of the value of the marital properties Wife grew during the marriage. Thus, it is only equitable, given the unusual responsibilities she assumed, that Wife share in the appreciation on the properties Husband grew during the marriage.

¶ 25 The trial court's decision is also in accord with *Schaumberg v. Schaumberg,* 875 P.2d 598 (Utah Ct.App.1994). In *Schaumberg,* the husband used marital funds to augment his separate property, a building he purchased with inherited funds. *See id.* at 603. We upheld the trial court's conclusion that the appreciation on the building had changed character from a separate to a marital asset. *See id.* We thus concluded the trial court did not exceed its discretion in

---

5. We emphasize that this is not the normal circumstance where a spouse reviews premarital stock holdings and makes investment decisions, devoting a few hours to such management, while maintaining a normal occupation. This situation involves very unique facts as to Husband's time spent managing premarital property and Wife's active efforts increasing the value of the marital property.

**182**

awarding one-half of the appreciation on the building to the wife. *See id.*[6]

¶ 26 Unlike in *Schaumberg*, in the present case, no marital funds were used to augment Husband's premarital partnership interests. However, the trial court found Wife "aided and freed [Husband] to engage in [partnership managing] activities largely because of the responsibilities [she] assumed." Further, Husband quit his lucrative job with Transamerica to devote full-time efforts to increase the value of the partnerships. Thus, marital labor augmented Husband's partnership interests. Further, *Schaumberg* recognizes that appreciation may be a marital asset apart from an underlying separate asset. *See id.* In fact, in *Schaumberg*, the court awarded the wife 50% of all of the appreciation. *See id.* In the present case, the trial court gave a much smaller and more narrowly drawn award based on the years of Husband's most active partnership management and only above a reasonable rate of appreciation.

¶ 27 Other case law supports the trial court's award as well. *See Savage v. Savage*, 658 P.2d 1201, 1204 (Utah 1983) (approving award of 40% of husband's interest in premarital corporation to wife where entire present value was developed during the marriage, and although wife did not assume responsibility for the corporation, her assumption of "domestic burdens" made husband's full-time participation in the corporation possible); *Lee v. Lee*, 744 P.2d 1378, 1380 (Utah Ct.App.1987) (reversing trial court for failing to award wife equitable share of corporation, established after marriage with proceeds from sale of separate property, where corporation's value was actualized during the marriage and wife assisted in operation of corporation, performed domestic duties, and reared parties' children).

¶ 28 In support of his position, Husband relies on *Burke v. Burke*, 733 P.2d 133 (Utah 1987). In *Burke*, the Utah Supreme Court rejected the husband's claim to a share of the appreciation on the wife's inherited property. *See id.* at 136. However, in *Burke* the appreciation was due solely to inflation that occurred during the marriage. *See id.* at 135. Of particular concern to the supreme court was whether the husband had made "any contribution toward the growth" or "whether the assets were accumulated or enhanced by the joint efforts of the parties." *Id.* Thus, the supreme court concluded the trial court did not exceed its discretion in denying the husband a share of the appreciation. *See id.* at 136.

¶ 29 Unlike in *Burke*, in the present case, the trial court found that the parties through joint, although distinct, efforts contributed to the appreciation on the premarital property. Wife's efforts benefitted their joint property while Husband's efforts benefitted his separate property. Moreover, the trial court appropriately accounted for appreciation due to inflation by subtracting a reasonable rate of return. Thus, contrary to Husband's assertion, *Burke* does not require that we reverse the trial court.

¶ 30 In sum, because Wife's efforts freed Husband to grow his premarital partnership interests, and he is entitled to one-half of the marital assets she grew, the trial court did not exceed its discretion in holding that equity requires that she receive a fair share of the appreciation on Husband's partnership interests and in awarding Wife a small portion of the appreciation, based only on the number of years of Husband's active partnership management.

### B. Amount of Appreciation

¶ 31 Husband argues the trial court erred in calculating the amount of appreciation on his partnership interests because there was no evidence as to the value of his interests at the time of the marriage and the financial statements used to determine the appreciation contained incorrect values and percentages for Husband's interests.

---

6. In *Schaumberg*, we emphasized that we were not "suggest[ing] that payment of a legitimate business expense related to the value or use of an inherited [or premarital] asset converts that asset or a portion of that asset into a marital asset." *Schaumberg v. Schaumberg*, 875 P.2d 598, 603 n.

1 (Utah Ct.App.1994). In the present case, we are not suggesting Husband's activities as an interest holder in the partnerships, before he assumed active management of the partnerships after his father's death, would convert the appreciation into a marital asset.

¶ 32 Utah appellate courts have not addressed who has the burden to prove the amount of marital appreciation on a premarital asset. However, we have suggested that a spouse who seeks an interest in the other spouse's business as a marital asset has the burden to establish the value of that business and its assets. *See Thomas v. Thomas,* 1999 UT App 239,¶ 18, 987 P.2d 603. We have also refused to find that a trial court exceeded its discretion in basing its valuation of marital property solely upon evidence presented by one spouse, where the other spouse failed to present any contrary evidence as to the value of such property, because the facts are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Smith v. Smith,* 751 P.2d 1149, 1151 (Utah Ct.App.1988) (quotations and citations omitted); *see also Warren v. Warren,* 655 P.2d 684, 687 (Utah 1982) (concluding trial court did not err in valuing marital property based on the sole evidence before it); *cf. Argyle v. Argyle,* 688 P.2d 468, 470–71 (Utah 1984) ("If [a party's] position [is] that [an asset] should have been valued by a measure different than the value" that party supplied, that party has "the burden of offering further evidence on alternative methods of valuation.").

¶ 33 Although we conclude that Wife had the burden to introduce credible evidence as to the appreciation on Husband's partnership interests, she met that burden by obtaining financial statements prepared by Husband. Husband is an experienced commercial property manager and he submitted these statements to banks. After Wife made a credible showing as to the amount of appreciation on Husband's partnership interests, Husband then had the burden to produce credible evidence contradicting the financial statements. He failed to offer such evidence. Thus, he has failed to show that the trial court exceeded its discretion in relying on the financial statements that he prepared. *See Talley v. Talley,* 739 P.2d 83, 84 (Utah Ct.App.1987).

¶ 34 Furthermore, although "crucial to determining whether the value of [an] asset [has] increased during the parties' marriage" is the finding as to the value of that asset at the time of marriage, *Rappleye v. Rappleye,* 855 P.2d 260, 263 (Utah Ct.App. 1993), the trial court did not err in relying upon Husband's 1989 financial statement, the only statement produced, for the beginning values in its appreciation calculation. Evidence was presented that California real property values were increasing at 10% a year. Thus, although evidence should have been presented as to the value of Husband's partnership interests in 1987, the trial court relied on a higher starting value, reducing the amount of appreciation awarded to Wife. Because Husband has not established that he was harmed by the trial court's reliance on a later beginning year, this claim fails.

### II. Park City Home Equity

¶ 35 Husband argues the trial court exceeded its discretion in not charging the Park City home equity with the Elman Trust Loan. He argues that because Wife received one-half of the benefit of the loan and the benefit of discharging her debts in bankruptcy, her share of the marital estate is increased by approximately $150,000, while he is left to pay the bankruptcy trustee or the Elman Trust.

¶ 36 "Whether moneys received from close family members represent a gift or a debt can be problematic." *Finlayson v. Finlayson,* 874 P.2d 843, 848 (Utah Ct.App.1994). "However, given the trial court's unique role in weighing the evidence and judging the credibility of the witnesses, we affirm its findings where they are adequate and supported by sufficient evidence." *Id.*

¶ 37 The trial court questioned whether the Elman Trust Loan was a gift and concluded that as a matter of equity the Park City home equity should not be charged with the loan. At trial, Wife testified that Husband told her the loan was a gift when she inquired about whether the parties could afford to purchase the Colony Lot. Although Husband denied the same, the only "loan" payment the parties made was the $50,000 payment, applied to the principal, following the sale of the parties' California home. Furthermore, Husband did not list the loan on financial statements until after the loan appeared on Wife's bankruptcy schedules.

Given these facts, we cannot say the trial court exceeded its discretion in refusing to charge the home equity with the loan.[7]

### III. Stock in Elman Properties, Inc.

¶ 38 Wife argues the trial court exceeded its discretion in not awarding her an equal share of Husband's interest in Elman Properties, Inc. (the Corporation), which administers the pension plan (the Plan) in which Husband, his mother, and his sister have interests. "[A]ll assets acquired by the parties during marriage are to be considered by the trial court when making an equitable distribution, unless the law specifically prevents the court from considering a particular asset." *Jefferies v. Jefferies*, 895 P.2d 835, 837 (Utah Ct.App.1995).

¶ 39 Husband acquired a 50% share in the Corporation during the marriage. However, according to Husband's trial testimony, the sole asset of the Corporation is the Plan. Prior to trial, Husband disclosed the present value of his interest in the Plan as $345,000. At trial, the parties stipulated to this present value and the trial court awarded Wife offsetting property.

¶ 40 Wife alleges the present value of the combined interests of the Plan beneficiaries is $1,035,000 ($345,000 × 3). She further alleges that because the Corporation has approximately $2,000,000 in assets, the Plan may be overfunded. Because the Plan may be overfunded, she argues she should be awarded one-half of Husband's stock.

¶ 41 Wife relies on *Savage v. Savage*, 658 P.2d 1201 (Utah 1983). In *Savage*, the Utah Supreme Court upheld an in-kind distribution of corporate stock where the evidence failed to establish the stock's value and the husband could not pay the wife her share. *See id.* at 1203–04. However, *Savage* is distinguishable from the present case. In *Savage*, three experts were called to testify as to the stock's value and presented plausible,

credible, but conflicting testimony. *See id.* at 1204. Thus, neither party had established the value of the stock by a preponderance of the evidence. *See id.* Unlike in *Savage*, in the present case, no credible evidence was offered to establish the Corporation's value beyond the Plan.

¶ 42 In essence, the trial court declined to award Wife more than offsetting property equal to the present value of Husband's interest in the Plan because there was no persuasive evidence as to any overfunding. Without such evidence, we cannot say the trial court exceeded its discretion in not awarding Wife 50% of Husband's interest in the Corporation.

### IV. Attorney Fees on Appeal

¶ 43 Wife seeks attorney fees on appeal. In divorce actions "where the trial court has awarded attorney fees and the receiving spouse has prevailed on the main issues, we generally award fees on appeal." *Rosendahl v. Rosendahl*, 876 P.2d 870, 875 (Utah Ct.App.1994). Because Wife has prevailed on the main issues on appeal, she is entitled to attorney fees on appeal. "We [accordingly] remand for [a] determination of the amount of reasonable fees." *Id.* In awarding Wife fees, the " 'trial court should also take into account the fact that [Wife] was only granted partial attorney fees at trial.' " *Id.* at 875–76 (quoting *Hill v. Hill*, 869 P.2d 963, 967 (Utah Ct.App.1994)) (alteration in original).

### CONCLUSION

¶ 44 In sum, we conclude the trial court's distribution " 'achieves a fair, just and equitable result.' " *Rappleye v. Rappleye*, 855 P.2d 260, 263 (Utah Ct.App.1993) (quoting *Dunn v. Dunn*, 802 P.2d 1314, 1320 (Utah Ct.App. 1990)). We accordingly conclude the trial court did not exceed its discretion in award-

---

7. We also reject Husband's argument that the trial court erred in distributing the equity in the Park City home to Husband because the Elman Trust Loan was listed on Wife's bankruptcy schedules. *See State ex rel. Miley v. Parrott*, 77 Ohio St.3d 64, 671 N.E.2d 24, 27 (1996) (per curiam) ("The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law.... With regard to the present pending state court divorce proceedings, ... the state court [acts] with expertise in such [proceedings] to decide questions that are an inherent part of the divorce process." (Quotations and citations omitted)).

ing Wife a portion of the appreciation on Husband's premarital partnership interests, prorated based on the number of years of Husband's most active management. We further conclude the trial court did not exceed its discretion in not charging the Park City home equity with the Elman Trust Loan. Finally, we conclude the trial court did not exceed its discretion in refusing to award Wife an equal share of Husband's stock in Elman Properties, Inc. We affirm and remand for a determination of reasonable attorney fees due Wife on appeal.

¶ 45 I CONCUR: NORMAN H. JACKSON, Presiding Judge.

ORME, Judge (concurring specially):

¶ 46 I concur in the court's opinion, except that as to section I.A., I concur only in the result. The basis for my disagreement can be succinctly stated.

¶ 47 This is, as the main opinion recognizes, a very unusual case. In affirming the trial court's equitable distribution to the wife of a portion of the husband's separate property, the main opinion sweeps too broadly and employs language that might be seized upon as precedential in cases that are not so very unusual. I do not believe the trial court's allocation can be validated merely because "Wife's efforts freed Husband to grow his premarital partnership interests," and I do not agree that "marital labor augmented Husband's partnership interests."

¶ 48 Instead, the court's allocation can best be affirmed in this atypical case on a theory of equitable set-off. During the time the husband devoted his energies exclusively to managing his separate interests, the wife took full charge of the financial aspects of the marital estate. Her astute efforts resulted in a considerable enriching of the marital estate and, thus, of the husband. It is entirely fair, then, that she share in some of the gain resulting from his efforts during the same period. In other words, it is only equitable, given the significant responsibilities the wife assumed, that she share in the appreciation of the husband's separate properties attributable to the part of the marriage when the parties allocated their time—their "marital time"—in a way that allowed the husband to focus exclusively on *his* assets while the wife was focused exclusively on *their* assets.[1]

---

1. Actually, it might have been conceptually easier had the trial court accomplished the same fair result by simply leaving the husband with his separate property, including all of its post-marital increase in value, while explicitly dividing an appropriate part of the marital estate on other than a fifty-fifty basis in recognition of the fact the increase in the value of the marital estate was due to the wife's extraordinary efforts on behalf of the estate while the husband devoted all his energies to his separate property.