2006 UT App 405

Brenda Joy OLIEKAN, Petitioner, Appellant, and Cross-appellee,

v.

Ronald Y. OLIEKAN, Respondent, Appellee, and Cross-appellant.

No. 20050310–CA.

Court of Appeals of Utah.

Oct. 5, 2006.

Stephen W. Cook, Cook & Associates PC, Salt Lake City, for Appellant.

Rodney R. Parker, Snow Christensen & Martineau, Salt Lake City, for Appellee.

Before Judges GREENWOOD, McHUGH, and ORME.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Petitioner Brenda Joy Oliekan (Wife) appeals the decision of the trial court evaluating and dividing three Individual Retirement Accounts (IRAs) in a divorce action. On appeal, Wife raises three issues. First, she argues that the trial court abused its discretion by failing to recognize that the parties' retirement interests were commingled.[1] Second, she contends that the trial court abused its discretion by applying a coverture[2] fraction to divide two of the parties' IRA accounts. Finally, Wife argues that the trial court erred by denying her reasonable attorney fees. Consequently, she contends that she is entitled to reasonable attorney fees incurred at trial, as well as on appeal.

¶2 On cross-appeal, Respondent Ronald Y. Oliekan (Husband) raises two arguments. He first contends that the trial court erred by awarding Wife a portion of his Deferred Compensation Plan as part of the marital estate. Husband also argues that the trial court erred by considering his entire collection of Lenox porcelain figurines part of the marital estate. We affirm.

## BACKGROUND

¶3 Wife and Husband were married February 13, 1993. They have no children together. However, Husband adopted Wife's two minor children from a previous marriage.

¶4 The couple separated on or about December 15, 2002, and subsequently divorced. At the time of the divorce, Wife was fifty-four years old. She was employed as an office manager and supervisor in the Adult Probation and Parole Department. Her gross monthly income was $3896.71. Husband was fifty-seven years old at the time of the divorce. He was retired from Utah Power & Light Company (Utah Power) and its successor, PacifiCorp, where he was a construction supervisor in line work and substation construction. Husband began working for Utah Power in 1969 and took an early retirement package on March 1, 2001, as part of the company's workforce reduction plan. After retiring, he continued to consult with PacifiCorp. His gross monthly income from consulting was $5204.39.

¶5 Prior to his retirement, Husband participated in three retirement plans offered by his employer. Husband had a Basic Retirement Plan (BRP) and a Deferred Compensation Plan (DCP), as well as a 401(k) plan. The trial court found that both the BRP and the DCP were defined benefit plans and accordingly "had no relevant account balances prior to [their] conversion to a lump sum on March 1, 2001"—the date of Husband's retirement. The 401(k) was a defined contribution plan that involved "contributions from salary, employer matching contributions, and earnings on investments."[3]

---

**1.** In her appellate brief, Wife uses the term "transmute" as a synonym for "commingle." However, Utah courts more commonly use the latter term. *See, e.g., Mortensen v. Mortensen,* 760 P.2d 304, 307 (Utah 1988) (noting that commingling is "sometimes called transmut[ing]"); *Dunn v. Dunn,* 802 P.2d 1314, 1321 (Utah Ct. App.1990) ("Premarital property may lose its separate distinction where the parties have inextricably commingled it...."); *Burt v. Burt,* 799 P.2d 1166, 1169 (Utah Ct.App.1990) (explaining that separate property may be considered part of the marital estate "where the parties have inextricably commingled the property with marital property so that it has lost its separate character."). As a convenience to the reader, we there-

fore use the term "commingle" to describe the circumstance in which "property completely loses its identity and is not traceable." *Mortensen,* 760 P.2d at 307.

**2.** "Coverture" is an archaic term defined as "[t]he condition of being a married woman." *Black's Law Dictionary* 372 (7th ed.1999). In divorce actions, the term is used as a method of differentiating between premarital and marital assets.

**3.** A defined contribution plan is comprised of funds held in an account established by the employee through his employer. A defined

¶ 6 As part of its Workforce Transition Retirement Program, PacifiCorp provided Husband the opportunity to retire early with enhanced benefits. Husband opted to participate and received a lump sum distribution in the total amount of $583,358.48 on March 1, 2001, the date he retired. He placed the distribution into three separate IRA accounts, each consisting of the amount in one of the three retirement plans.

¶ 7 In its findings, the trial court stated that it was applying the formula set forth in *Woodward v. Woodward*, 656 P.2d 431 (Utah 1982), to divide Husband's BRP and DCP retirement accounts. *See id.* at 433. The court's formula "attempted to identify the marital portion earned during the eight years [of the] marriage prior to March 1, 2001, by giving equal credit for each year of [Husband's] service in the plans." However, the court noted that the formula it was applying was not a "strict[ ] *Woodward* formula[ ] because the benefits accrued were converted to lump sums before the end of the marriage." The court also stated its intention to make equitable adjustments because "a large amount of the retirement benefits accrued during the marriage during [Husband's] last years of service."

¶ 8 The trial court divided the 401(k) funds in the IRA account using a different formula. Because this account represented a defined contribution plan rather than a defined benefit plan, Husband received his premarital interest, plus appreciation on that amount.

¶ 9 The trial court rejected Husband's contention that the funds in the DCP were entirely premarital. Rather, the court stated that "there needs to be some recognition that, even though the plan's benefit level was frozen under the DCP prior to marriage, the parties['] work together during the years of the marriage allowed [Husband] to retire, and [Husband] was required to be an em-

ployee on the date of retirement" to qualify for the benefit. Therefore, the court stated that its decision to consider the entire DCP a marital asset was "an equitable adjustment for the time of [Wife's] contribution to the marriage."

¶ 10 The court also rejected Wife's claim that the BRP could be calculated "based on the amount that would have been distributed under the plan's benefit formula if [Husband] had been permitted to retire on February 13, 1993," because Husband would not yet have been eligible to retire on that date and therefore could not have received that amount. Additionally, the court found that "adopting that calculation would result in years of service for benefit accrual not being treated equally."

¶ 11 At trial, Husband produced expert testimony by Roger Smith, a certified public accountant who performed forensic accounting services. Smith separated the marital and premarital portions of Husband's three accounts and conducted a retirement analysis on each account. He testified that he believed it would be possible to distinguish between the marital and post-marital interests, "particularly in the 401(k) balance."

¶ 12 Ultimately, the trial court found that Wife should be awarded one-half of the marital portion of the 401(k) account balance as of June 16, 2004. The court also found that Wife should be awarded one-half of the marital portion of the DCP account as of June 16, 2004. Finally, the court found that Wife should be awarded one-half of the marital portion of the BRP account balance as of June 16, 2004.

¶ 13 In addition to the issues involving Husband's retirement assets, the trial court determined the value of a collection of Lenox porcelain figurines. Husband testified that he began collecting the Lenox figurines in 1971 or 1972. He further testified that he

---

contribution plan is one in which 'the employee and the employer both make contributions to a retirement plan account'
.... By contrast, a defined benefit plan defines an employee's benefits 'as a certain amount per period of time.' "
*Mann v. Mann*, 22 Va.App. 459, 470 S.E.2d 605, 606 (1996) (footnote omitted) (citations omitted); *see also Black's Law Dictionary* 543 (7th ed.

1999) ("Retirement benefits under a defined-benefit plan are measured by and based on various factors such as years of service rendered and compensation earned.... Any plan that is not a defined-contribution plan is a defined-benefit plan; [a] defined-contribution plan [is] funded by the employee's contributions and the employer's contributions.").

had started a collection for his mother prior to the parties' marriage. Wife did not dispute that certain figurines in the collection had been purchased as a gift for Husband's mother and were later inherited by Husband after his mother's death. Nonetheless, the court found that the entire collection of Lenox porcelain figurines was marital property and that it was valued at $4650. The trial court awarded the collection to Husband as part of his share of the marital estate.

¶ 14 Regarding attorney fees, the court stated that both parties had incurred substantial attorney fees. At the beginning of the fourth day of trial, the court found that Wife had incurred approximately $25,000 in fees and Husband had incurred attorney and expert fees in excess of $40,000. Noting the difficulty of the matter, as well as Husband's greater ability to pay and Wife's greater need, the court awarded attorney fees to Wife, but reduced the requested amount, awarding her $7500.

¶ 15 Wife's appeal and Husband's cross-appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 16 Wife first argues that the trial court abused its discretion by rejecting her argument that the BRP and DCP funds in the retirement accounts were commingled. Second, Wife contends that the court abused its discretion by using a coverture fraction method of dividing the funds because it "resulted ... in a serious inequity." "A trial court has considerable discretion considering property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity." *Elman v. Elman*, 2002 UT App 83, ¶ 17, 45 P.3d 176 (alteration in original) (quotations and citation omitted). We will disturb the trial court's division only if there is a misunderstanding or misapplication of the law such that a manifest injustice or inequity results, indicating an abuse of discretion. *See Burge v. Facio,* 2004 UT App 54, ¶ 12, 88 P.3d 350.

¶ 17 Third, Wife argues she is entitled to reasonable attorney fees for the trial below, as well as attorney fees on appeal. A trial court has the power to award attorney fees in divorce proceedings. *See Rasband v. Rasband,* 752 P.2d 1331, 1336 (Utah Ct.App. 1988). "The decision to make such an award and the amount thereof rests primarily in the sound discretion of the trial court. However, the award must be based on evidence of both financial need and reasonableness." *Id.* (citations omitted). "In divorce actions 'where the trial court has awarded attorney fees and the receiving spouse has prevailed on the main issues, we generally award fees on appeal.'" *Elman,* 2002 UT App 83 at ¶ 43, 45 P.3d 176 (quoting *Rosendahl v. Rosendahl,* 876 P.2d 870, 875 (Utah Ct.App.1994)).

¶ 18 On cross-appeal, Husband raises two issues.[4] First, he argues that the trial court erred by treating his interest in the DCP as a marital asset. Second, he contends that the court erred in treating his entire collection of Lenox figurines as marital property. We review Husband's claims for abuse of discretion. *See id.* at ¶ 17.

## ANALYSIS

### I. The Trial Court's Division of Assets

#### A. Commingling

¶ 19 On appeal, Wife first argues that the parties' retirement funds became commingled following marriage and that as a result, the trial court's use of coverture methodology to divide the assets in those accounts was an abuse of discretion. Wife contends that the "straightforward valuation approach" rejected by the trial court would have produced results that were "more accurate and fair" than those resulting from the coverture model ultimately applied by the trial court.[5]

¶ 20 Turning to Wife's first argument, we consider whether the parties' marital and

4. Husband asserts other issues that we address briefly in footnote 9.

5. The trial court found that adopting Wife's approach "would result in years of service for benefit accrual not being treated equally," in contravention of the formula enunciated by the supreme court in *Woodward v. Woodward,* 656 P.2d 431, 433 (Utah 1982).

premarital interests in the retirement accounts became so commingled that they could not be segregated. Premarital property loses its separate identity and becomes a part of the marital estate if

> (1) the other spouse has by his or her efforts or expense contributed to the enhancement, maintenance, or protection of that property, thereby acquiring an equitable interest in it, or (2) the property has been consumed or its identity lost through commingling or exchanges or where the acquiring spouse has made a gift of an interest therein to the other spouse.

*Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988) (citations omitted).

¶ 21 There is nothing in the record to indicate—and Wife does not appear to argue—that she acquired an interest in Husband's accounts under the first factor, namely by contributing to "the enhancement, maintenance, or protection of [the] property." *Id.* Therefore, Wife's claim necessarily falls under the second factor—that Husband's premarital interests in the BRP and DCP plans lost their identity and became commingled when they were "converted from defined benefit plans, cashed out, and rolled over into two accounts." Similarly, Wife argues that Husband's 401(k) plan lost its separate identity when it was rolled over such that the "premarital [and] marital funds ... could not rationally be segregated without sheer speculation."

¶ 22 We disagree with Wife's contention. At trial, Wife did not controvert expert testimony that the marital and premarital interests were reasonably capable of being determined, or argue that it was inequitable for the trial court to divide the interests. *See Dunn v. Dunn*, 802 P.2d 1314, 1321 (Utah Ct.App.1990) ("Generally, the rule for premarital property is that each party retain the separate property he or she brought into the marriage. Some exceptions include where the property has been commingled, so that it has lost its separate character, or where it is

fair, just and equitable to do otherwise." (citations omitted)). In *Dunn*, the husband used the proceeds from the sale of an airplane and an automobile he owned prior to marriage to purchase another airplane and another automobile. *See id.* The husband then used marital income to make installment payments on his vehicle purchases. *See id.* The *Dunn* court determined that "[p]remarital property was consumed and its identification lost through commingling and exchanges." *Id.* As a result, the court held that "the trial court's treatment of [the] property as separate property was an abuse of discretion." *Id.*

¶ 23 *Dunn*, however, is distinguishable from the instant matter. Here, Husband's expert, Smith testified that although premarital and marital funds were deposited together, it was still possible to trace and separately identify the funds—"particularly in the 401(k) balance." Hence, the identity of the separate funds was not lost and Wife's commingling argument fails.

¶ 24 We therefore conclude that the trial court acted within its discretion when it determined that the marital and premarital funds could be separately identified and awarded Wife one-half of the marital portion of those accounts.

### B. The Trial Court's Application of a Coverture Fraction

¶ 25 Wife next argues that the trial court abused its discretion by utilizing a coverture fraction to distribute the IRA accounts.[6] Wife's argument rests on her contention that the formula used by the trial court is not applicable to defined benefit plans and that a coverture fraction should not have been used to identify and value marital from premarital interests where other credible evidence was available. Wife points out that Utah appellate courts have not decided this issue, but cites cases from

---

**6.** Wife makes a somewhat different argument regarding the IRA account representing the 401(k) plan. The trial court accepted the testimony of Smith, wherein he identified the account value as of the date of marriage, applied a rate of return to that value, and segregated that amount from the remainder. These calculations included accounting for contributions to the plan. We see no abuse of discretion in the trial court's findings on the 401(k) plan and do not further address it.

other jurisdictions[7] for the proposition that coverture fractions apply only the valuation of future benefit plans and may not be used to value marital and separate interests in ordinary accounts.[8] As a result, she argues that the trial court's application of a coverture fraction in this matter was an abuse of discretion. We find Wife's argument unpersuasive.

¶ 26 In *Woodward v. Woodward,* 656 P.2d 431 (Utah 1982), a divorce case involving retirement benefits, the supreme court determined that the method used to distribute the retirement benefits was properly a matter within the trial court's discretion, and stated that "where no present value can be established and the parties are unable to reach agreement, resort must be had to a deferred distribution based upon fixed percentages." *Id.* at 433 (citation omitted). The *Woodward* court further stated that "the marital property subject to distribution is a portion of the retirement benefits represented by the number of years of the marriage divided by the husband's [or wife's] employment. The wife [or husband] is entitled to one-half of that portion ... in this case." *Id.* at 433–34.

¶ 27 Wife concedes that *Woodward* is the controlling case in Utah regarding how retirement assets are valued and divided, but attempts to distinguish the present case factually because "the overwhelming growth of [Husband's] retirement accounts ... [occurred] during the period of the parties' marriage." Presumably, this is because appreciation of the accounts was greater in the later years. Wife argues that the value of Husband's accounts should be ascertained as of 1993, when the parties married, and the balance exceeding that 1993 value should then be divided between the parties. *Woodward,* however, made no such distinction, and treats all years of a defined benefit plan as having equal value. *See id.* at 433 (holding that a fixed system of distribution is applicable "where no present value can be established") (citation omitted)). The trial court followed the *Woodward* formula, stating that "the decision to give equal credit for each year of [Husband's] service in the plans is consistent with the approach set forth in [*Woodward*]." The court also reasoned that it was not able to apply "strict[] *Woodward* formulas because the benefits were converted to lump sums before the end of the marriage." Finally, the court acknowledged that a significant portion of Husband's benefits accrued during the years the parties were married, and announced its intention to "make some equitable adjustments to recognize that." In so doing, the trial court was clearly acting within its discretion. *See id.* (holding that the method used to distribute retirement benefits was properly a matter within the trial court's discretion).

¶ 28 Contrary to Wife's argument, we determine that the trial court properly applied

---

7. Wife's argument on this issue is weakened by the fact that at least three of the cases she cites to support her proposition that the coverture fraction was inapplicable to valuing defined benefit plans where future benefits are at stake that involved defined contribution plans, *not* defined benefit plans. *See, Tanghe v. Tanghe,* 115 P.3d 567, 571 (Alaska 2005); *In re Hester,* 122 Or.App. 147, 856 P.2d 1048, 1049 (1993); *Mann v. Mann,* 22 Va.App. 459, 470 S.E.2d 605, 605–06 (1996). Hence, as Husband argues, these cases are not analogous to the instant case, where benefits from a defined benefit plan were earned both prior to and during a marriage, then converted to present value and deposited in an account as a lump sum.

8. Contrary to Wife's argument on this issue, our research indicates that courts in other jurisdictions have utilized the coverture method in cases with facts similar to those of the instant case. *See Faulkner v. Faulkner,* 361 N.J.Super. 158, 824 A.2d 283, 287 (App.Div.2003) (concluding that the coverture fraction is the appropriate tool to use in attempting to determine allocation of the parties' interests in pension); *Robertson v. Robertson,* 167 N.C.App. 567, 605 S.E.2d 667, 670 (2003) (ascertaining that court did not err when it applied coverture fraction to determine marital portion of husband's pension in equitable distribution of marital assets proceeding, despite husband's claim that coverture applied only to defined benefit plans and he had a defined contribution plan); *see also* 3 John Tingley & Nicholas B. Svalina, *Marital Property Law* § 44:8, 45–46 (2d ed. 2006) ("The choice of distribution method depends on the particular needs and circumstances of the parties and is a matter of judicial discretion. In any event, when the court must decide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property, the court should be guided in the selection of a method by the desirability of disentangling the parties from one another as quickly and cleanly as possible.").

the *Woodward* formula in the instant case, despite the fact that *Woodward* concerned future retirement benefits and this case involves liquidated retirement funds. *See id.* at 433–34. Moreover, the trial court's meticulous explanation of the *Woodward* formula, as well as its explanation for deviating from that formula by applying equitable adjustments because Husband's benefits were converted to lump sums before the end of the marriage, were not an abuse of discretion, but an attempt to apply the *Woodward* formula and, more importantly, its underlying rationale, to the facts of this case. Therefore, we reject Wife's claim that the *Woodward* formula should not apply to the instant case. *See Haumont v. Haumont,* 793 P.2d 421, 424 n. 1 (Utah Ct.App.1990) ("[T]he trial court may, in the exercise of its broad discretion, divide the property equitably, regardless of its source or time of acquisition.").

## II. Attorney Fees

¶ 29 Wife also argues that she is entitled to reasonable attorney fees for the trial proceedings. She contends the trial court abused its discretion in awarding her limited attorney fees without any reasonable justification.

¶ 30 "Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." *Wilde v. Wilde,* 969 P.2d 438, 444 (Utah Ct.App.1998). Significantly, " 'the award [or denial of such fees] must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees.' " *Id.* (alteration in original) (quoting *Bell v. Bell,* 810 P.2d 489, 493 (Utah Ct.App. 1991)). And, "[f]ailure to consider these factors is grounds for reversal on the fee issue." *Id.*

¶ 31 In the present case, the trial court ordered Husband to pay $7500 of Wife's attorney fees. Wife relies on *Bell* for the proposition that a trial court's failure to make adequate findings supporting its attorney fees decision is an abuse of discretion. *See* 810 P.2d at 493. Although Wife correctly states the law, the trial court in this case provided adequately detailed findings such that we were able to conduct "a meaningful review of the trial court's ... ruling." *Id.* For example, although the trial court struggled with the issue of whether to award attorney fees in this matter, when the court ultimately decided to award fees, it explicitly considered both the ability of Husband to pay and the reasonableness of the requested fees. Under Utah Code section 30–3–3, a trial court may award limited fees in a domestic case if it enters its reasoning into the record. *See* Utah Code Ann. § 30–3–3(2) (1998 & Supp.2005). Of particular relevance are the trial court findings that Husband "ha[d] the greater ability to pay attorney[ ] fees," and that Wife had a greater need for financial assistance. By making these findings, the trial court comported with the requirements of section 30–3–3(2). *See id.* Accordingly, we reject Wife's claim and uphold the trial court's award of limited attorney fees.

¶ 32 Wife also requests attorney fees on appeal. In divorce actions, we will generally award attorney fees on appeal to the prevailing party if the trial court awarded attorney fees and the receiving party prevails on the main issues on appeal. *See Elman v. Elman,* 2002 UT App 83, ¶ 43, 45 P.3d 176. However, Wife has not "prevailed on the main issues on appeal." *Id.* Therefore, she is not entitled to attorney fees on appeal.

## III. Husband's Cross–Appeal

¶ 33 On cross-appeal, Husband raises two main issues.[9] First, he contends

---

9. Husband also raises several other issues on appeal. Husband argues that the award of alimony was inappropriate because it was "a disproportionate transfer of [Husband's] property to [Wife]." Trial courts are afforded considerable discretion in awarding alimony and we will not overturn an award absent a clear abuse of discretion. *See Davis v. Davis,* 2003 UT App 282, ¶ 7, 76 P.3d 716. Because we discern no abuse of discretion in the alimony award in this case, we do not further consider Husband's argument on this issue. *See id.* at ¶ 10. For similar reasons, Husband's argument regarding equitable adjustments in property division is also unavailing. We accord trial courts considerable discretion in such matters. Here, the trial court did not abuse its discretion in considering the circumstances of

that the trial court abused its discretion by failing to treat his interest in the DCP as a premarital asset because "the plan's benefit level was frozen prior to marriage." Second, he argues that the trial court's decision to consider his collection of Lenox porcelain figurines as a marital asset was error. We review Husband's claims for abuse of discretion. *See id.* at ¶ 17.

## A. Husband's DCP Account

¶ 34 Husband first argues that the court's decision to apply *Woodward* to the DCP was error. Husband asserts that the DCP was an entirely premarital asset because benefits were frozen in 1990, prior to the parties' marriage. As a result, Husband argues, the court's decision to include part of the DCP in the marital estate was error and an abuse of discretion.

¶ 35 At trial, the court found that the DCP's benefit level was frozen prior to the parties' marriage, although it continued to earn interest thereafter. Nonetheless, it rejected Husband's claim that the DCP "[was] entirely a premarital asset." Noting in particular the fact that "the parties['] work together during the years of marriage allowed [Husband] to retire," and explaining that "[Husband] was required to be an employee on the date of retirement in order to qualify for the benefit," the court stated that its decision to include the entire DCP as a marital asset "was an equitable adjustment for the time of [Wife's] contribution to the marriage."

¶ 36 We disagree with Husband's argument that the court's decision was error and/or an abuse of discretion. Rather, we determine that the court's findings with regard to its reason for considering the DCP part of the marital estate are sufficient to memorialize the circumstances supporting the decision. *See Bradford v. Bradford,* 1999 UT App 373, ¶ 26, 993 P.2d 887 ("A trial court may elect to distribute marital property unequally when the circumstances and needs of the parties dictate a departure from the general rule" that each party is entitled to his or her separate property and one-half of the marital property.). Furthermore, the parties and equitably dividing marital proper-

these circumstances support the trial court's conclusion that the DCP funds were subject to division utilizing the *Woodward* formula. Therefore, we uphold the trial court's determination and Husband's argument on this issue fails.

## B. The Lenox Collection

¶ 37 Husband contends that the trial court also erred in including the entire collection of Lenox porcelain figurines in the marital estate. Husband argues that approximately $3120.35 in value of the collection was acquired prior to the parties' marriage or was inherited from Husband's mother. Therefore, he claims, the trial court's finding that the Lenox collection was entirely marital property produced an inequitable result for Husband. *See Burge v. Facio,* 2004 UT App 54, ¶ 12, 88 P.3d 350 ("In order to reverse the trial court's distribution of property in a divorce action, we must find that it works such a manifest injustice or inequity as to indicate a clear abuse of discretion." (quotations and citation omitted)).

¶ 38 Husband identified which of the Lenox items were gifted to his mother and inherited from her upon her death. Husband also identified which items in the collection he had purchased prior to the parties' marriage. At trial, Wife did not controvert Husband's evidence. Therefore, the trial court failed to "properly categorize the parties' property as part of the martial estate or as the separate property of one or the other." *Burt v. Burt,* 799 P.2d 1166, 1172 (Utah Ct.App.1990). However, when considered in relation to the remainder of the parties' assets, we do not consider the court's failure to properly categorize the collection a significant omission such that it "work[ed] a manifest injustice." *Burge,* 2004 UT App 54 at ¶ 12, 88 P.3d 350 (quotations and citations omitted). In light of our affirmance of the trial court's decision on all other issues of this appeal, it would be a misuse of the judicial process to remand on this relatively insignificant issue, especially when Husband was awarded all of the Lenox collection. Ac- ty between the parties.

cordingly, we affirm the trial court on this issue.

## CONCLUSION

¶ 39 In sum, we determine that the trial court's finding that the IRA accounts could be separately identified was not an abuse of discretion and affirm the court's findings on that issue. For similar reasons, we also affirm the trial court's application of a modified *Woodward* approach to the valuation and division of Husband's retirement assets. *See Woodward v. Woodward,* 656 P.2d, 431, 433 (Utah 1982).

¶ 40 With regard to attorney fees, in reducing Wife's requested attorney fees, the trial court considered both Wife's need for assets and Husband's greater ability to pay, thereby meeting the requirements set forth in *Bell. See Bell v. Bell,* 810 P.2d 489, 493 (Utah Ct.App.1991). Thus, Wife's request for additional attorney fees incurred in the trial court fails. And, because Wife did not prevail on appeal, she is not eligible for attorney fees incurred on appeal. *See Elman v. Elman,* 2002 UT App 83, ¶ 43, 45 P.3d 176.

¶ 41 Concerning Husband's cross-appeal, we ascertain that the trial court did not abuse its discretion when it considered Husband's DCP a marital asset. Finally, we conclude that the trial court's failure to categorize part of the value of the Lenox collection as Husband's separate property was an abuse of discretion. *See Burt,* 799 P.2d at 1172. However, because the failure did not impose a "manifest injustice," *Burge,* 2004 UT App 54 at ¶ 12, 88 P.3d 350, we do not overturn the trial court's finding on this issue. We determine Husband's other arguments to be without merit.

¶ 42 Accordingly, we affirm.

¶ 43 I CONCUR: CAROLYN B. McHUGH, Judge.

¶ 44 I CONCUR, EXCEPT FOR SECTION II, IN WHICH I CONCUR IN THE RESULT ONLY: GREGORY K. ORME, Judge.