**2021 UT App 111**

## THE UTAH COURT OF APPEALS

SIREESHA NAKKINA,
Appellee,
*v.*
PRODEEP KUMAR MAHANTHI,
Appellant.

Amended Opinion[1]
No. 20190750-CA
Filed October 21, 2021

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 164903563

Eric K. Johnson, Attorney for Appellant

Kelli J. Larson, Attorney for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1     Prodeep Kumar Mahanthi and Sireesha Nakkina divorced in August 2019. Mahanthi appeals the trial court's decree of divorce, challenging the court's division of parent-time and its award of certain personal property and attorney fees to Nakkina.

---

1. This Amended Opinion replaces the Opinion in Case No. 20190750-CA, issued on June 17, 2021. After our original opinion issued, Mahanthi filed a petition for rehearing, and we called for a response. We grant the petition for the limited purpose of adding footnote 7, but otherwise deny the petition.

He also appeals the court's denial of his motion to amend its findings of fact and conclusions of law.

¶2     We conclude that the court acted within its discretion in denying the motion to amend. But we conclude that the court exceeded its discretion in not dividing parent-time equally between Mahanthi and Nakkina. We also conclude that the court erred in its personal property determination and that its attorney fees award was not supported by sufficient findings. Accordingly, we affirm in part, reverse in part, vacate the attorney-fees award and award of certain personal property, and remand for further proceedings.

BACKGROUND[2]

¶3     Nakkina and Mahanthi married in India in December 2005. Shortly thereafter, the couple moved to the United States for Mahanthi's employment. The couple lived in Salt Lake City, Utah, for a few months before relocating to Atlanta, Georgia.

¶4     After becoming pregnant with their first child, Nakkina returned to India in 2006, where the child was born. Nakkina eventually returned to the United States but again travelled to India in 2010 while pregnant with the couple's second child. Nakkina took the first child with her, and she remained in India for two and a half years with the two children. Mahanthi occasionally visited Nakkina and the children during their time

---

2. "On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings, and therefore recite the facts consistent with that standard," and "we present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *Kidd v. Kidd*, 2014 UT App 26, ¶ 2 n.1, 321 P.3d 200 (cleaned up).

in India but otherwise remained in the United States for his employment.

¶5     Nakkina returned to the United States with the children in 2012 and joined Mahanthi who had moved back to Utah. The couple separated in 2016, and Nakkina filed for divorce shortly thereafter. From the time of their separation until the trial court finalized the divorce decree—nearly three years—Nakkina exercised temporary primary physical custody of the children while Mahanthi exercised his allotted statutory parent-time pursuant to Utah Code section 30-3-35.

¶6     At trial, Nakkina testified that Mahanthi's employment prevented him from spending quality time with their children. She explained that when the children were very young, Mahanthi regularly traveled for work and was away from home for days at a time. She further alleged that while she was in India with the children, Mahanthi's visits were infrequent and he did not spend much time with the family even when he was present. She also testified that she was the primary caregiver for the children, performing tasks such as bathing and feeding them. In general, Nakkina claimed that Mahanthi was an absent father.

¶7     Mahanthi largely denied Nakkina's allegations. He testified that although he used to travel a lot for his employment and would occasionally stay up late working to accommodate his employer's operations overseas, he participated in raising the children, performing all the tasks Nakkina claimed she managed alone. Mahanthi further testified that he quit his travelling job several years prior and that his new job did not interfere with his parent-time.

¶8     Regarding the couple's personal property, Nakkina testified about pieces of jewelry she claimed Mahanthi gave her as gifts during the marriage. She described a diamond necklace, a pair of earrings, and another necklace and set of earrings,

which, according to Nakkina, have a combined estimated value of between $15,000 and $18,000.[3]

¶9 Finally, Nakkina testified that she had borrowed about $61,000 from friends and family that she used, in part, to pay the attorney fees she incurred in litigating the divorce. Nakkina admitted that there was no formal agreement to repay this money. However, she testified that her friends and family still expected to be repaid. In calculating her monthly expenses for alimony, Nakkina included $1,000 per month for payments associated with this debt.

¶10 Following trial, the court issued findings of fact and conclusions of law and ordered the parties to prepare a final decree for the court's review. Invoking "rules 52 and 59 of the Utah Rules of Civil Procedure," Mahanthi filed a motion to amend certain of the court's findings of fact and conclusions of law. The trial court denied Mahanthi's motion, stating that it viewed the "Motion to Amend as a motion for the Court to *reconsider* its recent Findings, which the Court will not do." It subsequently issued a Final Order and Decree.

¶11 In its Final Order and Decree, the trial court awarded the parties joint physical custody with a parent-time schedule close to equal time: Nakkina was awarded eight out of every fourteen days with the children and Mahanthi was awarded six out of every fourteen days (6/14 schedule). The court stated that the "6 out of 14 schedule provides an equitable balance and adequately considers *all* of the facts and, ultimately, is in the best interest of

---

3. Nakkina estimated that the jewelry was worth about $18,000 and could be sold for "maybe" $15,000. Her estimation that the jewelry could be sold for $15,000 was struck for lack of foundation, but that is the value the court gave the jewelry in its final decree. Neither party challenges that valuation.

the children." While the court acknowledged that many factors supported "equal time, or close to equal time, for both parents," it reasoned that two related factors justified the less-than-equal division of parent-time for Mahanthi: (1) that the "family unit relies heavily on [Mahanthi's] income" and (2) that "the demands of [Mahanthi's] job are, and will likely always be, greater than any of the demands of [Nakkina's] job."

¶12    Next, the trial court awarded the jewelry exclusively to Nakkina and "decline[d] to award [Mahanthi] anything for [it]." Consistent with Nakkina's testimony, the court found that Mahanthi had gifted the jewelry to her during the marriage and that it was worth "about $15,000." The court further concluded that the jewelry "need not be divided" because "gifts given during the marriage are not marital property."

¶13    Lastly, the trial court ordered Mahanthi to pay Nakkina her attorney fees in the amount of $40,600, crediting Mahanthi for his prior payments. The court rejected Nakkina's $1,000 monthly expense "in debt payments to family and friends for the alleged loan" for attorney fees because she presented no evidence that she was legally obligated to pay her friends and family back. Still, it justified awarding attorney fees in a subsequent order, stating,

> [Nakkina] has a demonstrated monthly need that will be addressed, at least in part, by an award of child support and alimony. In calculating [Nakkina's] need, the Court did not address her attorney's fees, which were above and beyond her monthly expenses—which she is unable to meet. Accordingly, [Nakkina] has a demonstrated need associated with any and all fees she has incurred in this matter.

(Cleaned up.)

¶14    Mahanthi now appeals.


ISSUES AND STANDARDS OF REVIEW

¶15    On appeal, Mahanthi raises four issues. First, he contends that the trial court erred in not awarding him equal parent-time. We review a trial court's parent-time determination for abuse of discretion. *Blocker v. Blocker*, 2019 UT App 82, ¶ 8, 444 P.3d 541.

¶16    Second, Mahanthi contends that the trial court erred in awarding Nakkina the jewelry Mahanthi gave her as gifts during the marriage. "We will not disturb a property award unless we determine that there has been a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderates against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion." *Jensen v. Jensen*, 2009 UT App 1, ¶ 6, 203 P.3d 1020 (cleaned up).

¶17    Third, he contends that the trial court erred in awarding attorney fees to Nakkina. "We review a trial court's attorney fees award in divorce proceedings for abuse of discretion." *Id*. ¶ 7. "An award for attorney fees must be based on sufficient findings, and the failure to make such findings requires remand for more detailed findings by the trial court." *Leppert v. Leppert*, 2009 UT App 10, ¶ 25, 200 P.3d 223 (cleaned up).

¶18    Fourth, he contends that the trial court improperly refused to reconsider its findings of fact and conclusions of law. "As long as the case has not been appealed and remanded, reconsideration of an issue before a final judgment is within the sound discretion of the district court." *Ross v. Short*, 2018 UT App 178, ¶ 10, 436 P.3d 318 (cleaned up). Thus, we will reverse a trial court's denial of a motion to reconsider "only if there is no

reasonable basis for the decision." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 16, 163 P.3d 615 (cleaned up).

ANALYSIS

I. Parent-Time

¶19    Mahanthi first contends that the trial court erred by awarding him less than equal parent-time. When determining what is in the children's best interest regarding parent-time, the decision "turns on numerous factors, each of which may vary in importance according to the facts in the particular case." *See Sanderson v. Tryon*, 739 P.2d 623, 627 (Utah 1987). Generally, parent-time should be awarded "at a level consistent with all parties' interests." Utah Code Ann. § 30-3-32(1) (LexisNexis 2019). "Absent a showing by a preponderance of evidence of real harm or substantiated potential harm to the child," it is in the children's best interest "to have frequent, meaningful, and continuing" time with each parent. *Id*. § 30-3-32(2)(b)(i). In addition, each parent is entitled to "frequent, meaningful, and continuing access" with the children. *Id*. § 30-3-32(2)(b)(ii).

¶20    Even though we afford the trial court broad discretion when weighing these factors, a parent-time award "must be firmly anchored on findings of fact that (1) are sufficiently detailed, (2) include enough facts to disclose the process through which the ultimate conclusion is reached, (3) indicate the process is logical and properly supported, and (4) are not clearly erroneous." *See Marchant v. Marchant*, 743 P.2d 199, 203 (Utah Ct. App. 1987). "Findings of fact are clearly erroneous if it can be shown that they are against the clear weight of evidence or that they induce a definite and firm conviction that a mistake has been made." *Maughan v. Maughan*, 770 P.2d 156, 159 (Utah Ct. App. 1989). Additionally, the trial court "cannot act arbitrarily, or on supposition or conjecture as to facts upon which to justify

its [parent-time] order." *See Iverson v. Iverson*, 526 P.2d 1126, 1127 (Utah 1974).

¶21 Mahanthi argues that the trial court's order awarding him less-than-equal parent-time is not firmly anchored in the findings of fact because it is based on speculation, conjecture, or supposition. He asserts that there is no evidence to support the trial court's finding that he cannot simultaneously maintain his employment and exercise equal parent-time. In contrast, Nakkina argues that the trial court sufficiently articulated its findings, justifying the 6/14 schedule, and that such a decision was within the trial court's discretion. We agree with Mahanthi. Although we are mindful of the court's discretion and appreciate the careful way it articulated its findings in support of a 6/14 schedule, the court's rationale is not supported by the evidence.

¶22 In addressing the statutory factors for determining parent-time in section 30-3-10 of the Utah Code, the trial court found that the factors "favorably support a joint arrangement giving each parent equal, or close to equal, time with the [children]." For example, the court found it was "important for both parents to have a relationship" with the children and there "was certainly nothing to suggest that maximum time with either parent would be harmful to . . . either of the children." Also, the court concluded that the children "have good relationships with each of their parents" and "there is no legitimate argument that the [children] would be endangered by broadening [Mahanthi's] parent time from 5 to 6 or 7 days every two weeks."

¶23 But after highlighting the many reasons that justified an award of equal parent-time, the court ultimately rejected a 50/50 split for two related reasons. First, the court explained, "the reality is that this family unit relies heavily on [Mahanthi's] income. It is imperative that he continue with his work." "Second, the demands of [Mahanthi's] job are, and will likely

always be, greater than any of the demands of [Nakkina's] job, whatever that may be." Thus, the court awarded Mahanthi less than equal parent-time to "reduce [his] burden" and provide some "flexibility in his schedule to accommodate his work demands." While the court meant well, its findings lack evidentiary support.

¶24   The testimony at trial was that years ago, while the children were still very young, Mahanthi's job required that he travel several nights every week and, occasionally, work late to accommodate his employer's operations. But there was no evidence that Mahanthi's work continued to be so demanding. Instead, he testified that his schedule did not interfere with his parent-time, and the court even expressed its lack of concern about Mahanthi's "availability as a parent going forward." Further, although Nakkina opposed a 50/50 split for a variety of reasons, she made no complaints about his work schedule, and she expressed no concern over Mahanthi's ability to accommodate both his job and his children.

¶25   In sum, the trial court has broad discretion in awarding parent-time. But limiting Mahanthi's parent-time based on unsubstantiated concerns about his work demands "does not follow from the findings stated." *See Nebeker v. Orton*, 2019 UT App 23, ¶ 39, 438 P.3d 1053. We therefore reverse the trial court's award of parent-time with instructions to award equal parent-time.

## II. Jewelry

¶26   Mahanthi next contends that the trial court erred in awarding Nakkina the jewelry Mahanthi gave her during the marriage. In distributing property in a divorce proceeding, "[t]he presumption is that marital property will be divided equally while separate property will not be divided at all." *Lindsey v. Lindsey*, 2017 UT App 38, ¶ 32, 392 P.3d 968. Thus, a

trial court "must identify the property in dispute and determine whether each item is marital or separate property." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 15, 176 P.3d 476. Mahanthi contends that the trial court applied the wrong legal standard to conclude that his gifts to Nakkina are not marital property subject to division. We agree.

¶27   Citing *Burke v. Burke*, 733 P.2d 133 (Utah 1987), the trial court concluded that "gifts given during the marriage are not marital property and need not be divided in the event of divorce." But *Burke* involved an inheritance received by one spouse during the marriage, not a gift from one spouse to the other purchased with marital funds. *See id*. at 134–35. As a general rule, courts "award property acquired by one spouse by gift and inheritance during the marriage (or property acquired in exchange thereof) to that spouse, together with any appreciation or enhancement of its value," unless the property has been commingled or the other spouse has acquired an equitable interest in the property by contributing to its enhanced value. *Mortensen v. Mortensen*, 760 P.2d 304, 308 (Utah 1988). Gifts and inheritance to an individual spouse are treated as separate property because they are "not acquired through the joint efforts of the parties." *See Preston v. Preston*, 646 P.2d 705, 706 (Utah 1982) (cleaned up); *see also Mortensen*, 760 P.2d at 307 (explaining that "property which comes to either party by avenues other than as a consequence of their mutual efforts owes nothing to the marriage and is not intended to be shared" (cleaned up)).

¶28   But this rule applies only to gifts received during the marriage from an outside source. It does not apply when one spouse uses marital funds to purchase property, regardless of whether those purchases are designated as a "gift" from one spouse to another. *See Morris v. Morris*, 2005 UT App 435U, para. 3 (holding that the district court acted within its discretion in valuing "gifts" from one spouse to another as marital property when one spouse "purchased the gifts during their marriage,

using marital funds to do so"). In such circumstances, both the gifting and receiving spouse have a pre-existing right of ownership in the marital assets used to acquire the property. A purchase financed with marital funds already belonging to both spouses is not a "gift" in the sense used in our case law.

¶29    In light of this precedent, it was error for the trial court to conclude, as a matter of law, that the jewelry Mahanthi gave Nakkina during the marriage was necessarily Nakkina's separate property and not subject to division in the divorce. The property was acquired during the marriage, with marital funds, and as such was presumptively marital. *See Lindsey*, 2017 UT App 38, ¶ 31 ("Marital property ordinarily includes all property acquired during marriage, whenever obtained and from whatever source derived." (cleaned up)). We therefore vacate the court's award of the jewelry and remand to give the trial court the opportunity to reconsider its award and, if necessary, to amend its order awarding the jewelry in its entirety to Nakkina.[4]

## III. Attorney Fees

¶30    Mahanthi next argues that the trial court erred in awarding Nakkina attorney fees. Pursuant to section 30-3-3(1) of the Utah Code, a party in a divorce proceeding may be required

---

4. Nakkina invites us to affirm the trial court's award on alternative grounds, arguing that even if the jewelry is "a marital asset eligible for division between the parties, the court still has broad discretion in making an award of the personal property and the court was well within its right to award the jewelry to [Nakkina]." We decline this invitation because it is not for us to exercise that discretion on behalf of the trial court. The court may determine it is appropriate, for another reason, to award the jewelry to Nakkina. But that is a decision for the trial court to make in the first instance.

to pay the attorney fees "of the other party to enable the other party to prosecute or defend the action." Utah Code Ann. § 30-3-3(1) (LexisNexis 2019). The party to be awarded attorney fees under this section has the burden to prove (1) that the payee spouse has a financial need, (2) that the payor spouse has the ability to pay, and (3) that the fees requested are reasonable. *Dahl v. Dahl*, 2015 UT 79, ¶ 168, 459 P.3d 276. On appeal, Mahanthi challenges only the first element of the test: whether Nakkina had a financial need for the award of attorney fees. "When determining the financial need of the requesting spouse, [courts] generally look to the requesting spouse's income, including alimony received as the result of a divorce decree; the property received via the property distribution award; and his or her expenses." *Id*. ¶ 170 (cleaned up).

¶31　Mahanthi argues that the court erred in awarding Nakkina her attorney fees because those fees have already been paid. Nakkina argues that this is irrelevant because attorney fees may still be awarded based on need if a party borrowed funds to pay those fees. Nakkina has a point. Utah courts have recognized that "[p]arties to a divorce action often incur debt to retain counsel," *id.*, and that "the very existence of indebtedness to fund legal services may tend to show need," *Kimball v. Kimball*, 2009 UT App 233, ¶ 46, 217 P.3d 733. Likewise, Nakkina argues that she incurred debt to pay her fees, and that the friends and family who lent her funds "expected to be repaid eventually and it would detrimentally impact her relationships if she did not repay them."

¶32　We acknowledge that indebtedness to friends and family, while not determinative, may tend to demonstrate a need sufficient to satisfy section 30-3-3(1). *See id.* (holding that it is the existence of indebtedness to fund legal services that tends to show need regardless of whether the debt is owed to an attorney, a bank, family, or a friend). This is true "especially if [the spouse] is expected to repay his [or her] family in due

course, even if the family members are disinclined to commence a collection action to enforce such repayment." *Id.* ¶ 48. But it is unclear if Nakkina's indebtedness, or something else, was the basis for the court's finding that she had a need for assistance to pay her attorney fees.

¶33 In finding that Nakkina had an unmet need, the court stated that she "has a demonstrated need associated with any and all fees she has incurred in this matter" and incorporated the need-related "findings made in [the court's] principal set of [Findings of Fact and Conclusions of Law]." But in those findings, the only mention of Nakkina's attorney fees was in the court's expression of "concern[] with the reliability of some of" her claimed expenses. In particular, the court did not accept Nakkina's claimed expense of $1,000 a month "in debt payments to family and friends for the alleged loans" used to pay her attorney fees. The court rejected Nakkina's claim that she was "legally indebted to family members" because her testimony on the "topic was ambiguous" and because it was not supported by any "corroborating documents."

¶34 Unfortunately, these findings do not reveal the steps the trial court took to find that Nakkina had demonstrated an unmet need. *See Jensen v. Jensen*, 2009 UT App 1, ¶ 18, 203 P.3d 1020 ("When awarding attorney fees in divorce cases, the trial court is required to make explicit findings regarding the financial need of the receiving spouse . . . ." (cleaned up)). The court stated that Nakkina "is unable to meet" her attorney fees expenses, which "were above and beyond her monthly expenses," but this finding does not appear to account for the fact that Nakkina's fees had already been paid and that the court rejected Nakkina's claims of indebtedness to her family and friends, at least for purposes of determining alimony. Accordingly, we vacate the

trial court's attorney fees award and remand for reconsideration and entry of sufficient findings of fact thereon.[5]

## IV. Motion to Amend

¶35 Lastly, Mahanthi appeals the trial court's denial of his motion to amend the court's findings of fact and conclusions of law. Mahanthi contends that his motion was properly filed under rule 59 of the Utah Rules of Civil Procedure and that the court erred in rejecting it as a motion to reconsider. We disagree.

¶36 "Motions to reconsider are not recognized by the Utah Rules of Civil Procedure," and "trial courts are under no obligation to consider [them]." *Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 15, 163 P.3d 615; *see also A.S. v. R.S.*, 2017 UT 77, ¶ 28, 416 P.3d 465. Although Mahanthi takes no issue with this general principle, he contends that the court erred in "recast[ing]" his motion to amend as a motion to reconsider. Mahanthi argues that his motion "was appropriately titled as a

---

5. Mahanthi also complains that he is entitled to a credit for an alleged overpayment of attorney fees in the amount of $10,000. He argues that Nakkina's lawyer was paid $64,000 in fees, but because the court awarded Nakkina only $54,600, he should receive a credit for some of the fees he already paid. Mahanthi has not demonstrated that he preserved this issue for appeal, and we reject it on that basis. *See Allen v. Allen*, 2021 UT App 20, ¶¶ 37–38, 483 P.3d 730, *petition for cert. filed*, May 21, 2021 (No. 20210355). But even if the issue had been preserved, it does not appear that any amount would be due Mahanthi. The trial court found that Nakkina reasonably incurred $54,600 in attorney fees, and it ordered Mahanthi to pay $40,600 after crediting him $14,000 for fees he already paid. The fact that Nakkina may have paid her attorney more than $54,600 does not entitle Mahanthi to a credit.

Rule 59 motion to amend and contained all the elements required by the rule." (Cleaned up.) But Mahanthi's motion was not a rule 59 motion simply because he labeled it as such.

¶37   Rule 59 allows a party to seek to alter or amend a *judgment*. *See* Utah R. Civ. P. 59(e) ("A motion to alter or amend the judgment must be filed no later than 28 days after entry of the judgment."); *see also Ron Shepherd Ins., Inc. v. Shields*, 882 P.2d 650, 653 (Utah 1994) ("Rule 59, according to its plain language, applies only to motions for new trials or amendments of judgments."). Mahanthi's motion did not seek to amend a judgment; rather, Mahanthi sought to amend the court's pre-judgment findings of fact and conclusions of law.[6] Thus, because Mahanthi's motion preceded the judgment, the court did not err in construing it as a motion to reconsider, and Mahanthi has not shown that the court abused its discretion in denying it as such.[7]

---

6. Mahanthi expressed some confusion about whether the court's findings and conclusions constituted its final judgment in the case. But the court's order directed Mahanthi's counsel to draft a "*Final Order and Decree* in accordance with these findings and conclusions." Further, subsequent proceedings made clear that the court expected to enter a decree to effectuate its findings and conclusions, and the court later entered a Final Order and Decree.

7. Mahanthi argues that this determination conflicts with our decision in *Hudema v. Carpenter*, where we held that a rule 59 motion filed before the entry of judgment "was timely in the jurisdictional sense and thus extended the period in which [Hudema] could file her notice of appeal." 1999 UT App 290, ¶ 19, 989 P.2d 491. But we are not holding that a rule 59 motion made before the entry of judgment is untimely for purposes of tolling the appeal period. Rather, we hold that the court acted

(continued…)

V. Fees on Appeal

¶38 Nakkina requests an award of her attorney fees incurred in defending this appeal. "In divorce actions where the trial court has awarded attorney fees and the receiving spouse prevails on the main issues, we generally award fees on appeal." *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 17, 257 P.3d 478 (cleaned up). Although Nakkina was awarded fees by the trial court, we have vacated that award and remanded for reconsideration. Further, even if that award is ultimately sustained by the trial court, because Nakkina has prevailed only on the motion to amend issue and not the others, she is not entitled to an award of attorney fees on appeal.

CONCLUSION

¶39 The trial court erred by not awarding equal parent-time because the award was not firmly anchored on findings of fact. Thus, we reverse the ruling, and we order the court to award equal parent-time. The court also erred by awarding Nakkina the jewelry based on a misunderstanding of the law. We therefore vacate the award and remand with instructions to divide the jewelry using the appropriate standard. Next, the court erred by awarding Nakkina attorney fees because it failed

---

(…continued)

within its discretion to construe Mahanthi's motion as a motion to reconsider when Mahanthi sought reconsideration of the court's findings of fact and conclusions of law and filed it before the court entered its final decree. *See Gillett v. Price*, 2006 UT 24, ¶ 7 n.2, 135 P.3d 861 ("Arguably, the plantifs' [purported rule 59] motion could not even be construed as a postjudgment motion to amend under our prior case law because the plaintiffs filed it before the entry of a final judgment.").

to make adequate findings regarding her need related to receiving attorney fees. Thus, we vacate the attorney fees award and remand for reconsideration and entry of sufficient findings of fact thereon. Lastly, the court did not err by dismissing Mahanthi's motion to amend because when his motion was filed there was no final order or judgment to be reviewed under rule 59. We therefore affirm the court on this issue.

—————