2022 UT App 93

# THE UTAH COURT OF APPEALS

WESTON BENNION,
Appellant,
*v.*
DALE STOLROW,
Appellee.

Opinion
No. 20210061-CA
Filed July 29, 2022

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 180902051

Emily Adams, Freyja Johnson, Lindy W. Hamilton,
and Robert W. Gibbons, Attorneys for Appellant

Troy L. Booher, Beth E. Kennedy, Taylor P. Webb,
Trystan B. Smith, Todd A. Turnblom, and Tajha L.
Ferrara, Attorneys for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.[1]

BENCH, Senior Judge:

¶1 Weston Bennion appeals the district court's decision on his motion to enforce a settlement agreement. He argues that the court incorrectly interpreted the agreement when it determined that a portion of the payment under the agreement could include a subrogation claimant as a joint payee. We affirm.

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

BACKGROUND

¶2      On July 11, 2015, Bennion was significantly injured in a fall when floorboards of Dale Stolrow's deck broke. Bennion subsequently filed suit against Stolrow. Stolrow was insured by State Farm Fire and Casualty Insurance Company (State Farm), and attorneys from its in-house counsel's office represented Stolrow in the litigation.

¶3      After two years of litigation, with a trial date approaching, the parties reached a settlement agreement. The agreement set forth the following release:

> In consideration of [$150,000] . . . , Weston Bennion hereby releases and forever discharges Dale Stolrow and . . . State Farm . . . of and from any and all past, present, or future claims and demands, which Weston Bennion has or claims to have, for or in any manner growing out of the incident occurring on July 11, 2015 . . . .

The settlement agreement also contained a paragraph specific to subrogation claims and liens, paragraph 7, which stated, in part,

> Weston Bennion . . . acknowledge[s] that this settlement is, or may be, subject to one or more subrogation claims or health care liens. Weston Bennion expressly agrees to indemnify and save harmless Dale Stolrow . . . and State Farm . . . from any and all liability for such health care liens and from any other lien or subrogation claim arising out of the incident which is the subject of this release.

Additionally, the settlement agreement contained a provision specifying that Bennion would "indemnify, defend, and hold harmless" Stolrow and State Farm in the event that future claims

or other legal actions relating to the deck accident were brought against them.

¶4 Stolrow's attorneys prepared the settlement agreement and sent it to Bennion for his signature. Along with the transmission of the agreement for signature, the attorneys informed Bennion that they had notice of a lien from Rawlings Company (Rawlings), which was working on behalf of Blue Cross/Blue Shield, Bennion's insurer, in the amount of $9,103.09 and that they intended to issue a separate check for the lien. The communication also told Bennion that if he would first like to negotiate with Rawlings for a lower payment amount, State Farm was willing to issue the checks according to the results of such negotiations.

¶5 Bennion signed the agreement but responded that no check that included a lienholder would be acceptable. State Farm was not willing to make payment without addressing the Rawlings lien; but it offered several alternatives to address the lien: (1) issuing one $150,000 check that included Rawlings as a joint payee; (2) issuing a check for the undisputed amount to Bennion and his attorney, and a separate check for the lien amount that would include Rawlings as a joint payee; or (3) waiting to issue the check until the matter was negotiated and resolved between Bennion and Rawlings. Bennion refused all options and continued to insist on payment that did not account for the Rawlings lien.

¶6 Bennion thereafter filed a motion to enforce the settlement agreement, arguing that the agreement was breached by the refusal to write one check for the full settlement amount to Bennion and that Stolrow was trying to change the terms of the agreement. In response, Stolrow argued that there was no attempt to alter the settlement agreement's terms but that where the agreement specified that the consideration paid was subject to subrogation claims and health care liens, the issuance of the two

checks that took the lien into account would be consistent with the agreement.

¶7      Under these facts, the district court agreed that Stolrow and State Farm's proposed issuance of two checks was appropriate, particularly where to do otherwise could leave Stolrow and State Farm vulnerable to a cause of action by Rawlings. State Farm then promptly issued the checks as it had proposed—one to Bennion, his attorney, and Rawlings for $9,103.09 and one to Bennion and his attorney for $140,896.91.

¶8      Bennion thereafter submitted a motion to reconsider, which the district court denied. Bennion now appeals.


ISSUES AND STANDARDS OF REVIEW

¶9      Bennion argues that the district court erred in interpreting the unambiguous settlement agreement to allow a portion of the consideration to be paid via a check issued to him and Rawlings as joint payees. "Settlement agreements are governed by the rules applied to general contract actions. Questions of contract interpretation not requiring resort to extrinsic evidence are matters of law, which we review for correctness." *Pioneer Builders Co. of Nevada v. K D A Corp.*, 2018 UT App 206, ¶ 10, 437 P.3d 539 (quotation simplified); *see also Mid-America Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 16, 216 P.3d 352 ("When, as in this case, a contract is unambiguous and can be interpreted as a matter of law, we review the district court's interpretation for correctness, according no deference to the district court.").

¶10      Bennion also takes issue with the district court's denial of his motion to reconsider, arguing that the court's incorrect interpretation of the settlement agreement also "permeated" this ruling. "As long as the case has not been appealed and remanded, reconsideration of an issue before a final judgment is within the sound discretion of the district court. Thus, we will reverse a trial

court's denial of a motion to reconsider only if there is no reasonable basis for the decision." *Nakkina v. Mahanthi*, 2021 UT App 111, ¶ 18, 496 P.3d 1173 (quotation simplified).

## ANALYSIS

¶11  The parties agree that the settlement agreement is valid and unambiguous. Bennion argues only that the district court erred in its interpretation of this unambiguous settlement agreement. "When we interpret a contract we first look at the plain language of the contract to determine the parties' meaning and intent. If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395 (quotation simplified). Bennion argues that the plain language of the settlement agreement required $150,000 be paid to him as consideration and did not allow Stolrow "to make a direct payment to any claimant, lienholder, or other third party."

¶12  As an initial matter, we note that Bennion's references to having received only a "partial payment" or to a "direct payment" being made to Rawlings are inaccurate. This misapprehends what the district court determined was allowed by the settlement agreement. The court approved the issuance of "one check to [Bennion] in the undisputed amount and one check to both [Bennion] and Rawlings in the disputed subrogation amount." Thus, both checks, together totaling $150,000, listed Bennion as a payee and were delivered to him. The full settlement amount was paid to Bennion, although joint payees were included on the checks.[2] The question is simply whether issuing part of the

---

2. Bennion seems to suggest that a payment cannot be considered made to him if a joint payee is listed on the check. However, this is inconsistent with his characterization of the larger check as

(continued…)

payment to both Bennion and Rawlings was permitted under the plain language of the settlement agreement.

¶13 The paragraph setting forth the consideration amount provides, "In consideration of [$150,000] . . . Weston Bennion hereby releases and forever discharges Dale Stolrow and . . . State Farm . . . ." And while we agree with Bennion that this provision does not specifically permit payment to a claimant or lienholder, we cannot say the same for paragraph 7 of the settlement agreement, which, according to its title, is intended to specifically address subrogation claims or liens.

¶14 Paragraph 7 states,

> Weston Bennion . . . acknowledge[s] that this settlement is, or may be, subject to one or more subrogation claims or health care liens. Weston Bennion expressly agrees to indemnify and save harmless Dale Stolrow . . . and State Farm . . . from any and all liability for such health care liens and from any other lien or subrogation claim arising out of the incident which is the subject of this release. All medical and other expenses and losses incurred by Weston Bennion, past, present, and future as a result of the incident referred to above, shall be Weston Bennion's own responsibility. The consideration paid to Weston Bennion for this release is intended to cover all such expenses or losses.

In the first sentence, this paragraph specifies that the settlement may be "subject to"—that is, "affected by"—subrogation claims or health care liens. *See Subject to*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subject%20to

---

having been paid to him notwithstanding the fact that it was issued to Bennion and his attorney as joint payees.

[https://perma.cc/WC5Y-RTT9] (defining "subject to" as "affected by or possibly affected by (something)"). Thus, this provision recognizes that the settlement made with Bennion may be impacted by existing subrogation claims or health care liens. We see no other reasonable interpretation of this provision.

¶15 Bennion focuses on the language at the end of paragraph 7 that mentions the consideration "paid to" Bennion to argue that he must be paid the full settlement amount without limitation. However, as discussed above, the full consideration was paid to Bennion, *supra* ¶ 12, and we see nothing in this language that would prohibit portions of that payment to include joint payees. Indeed, it would seem that such an inclusion helps achieve the provision's stated intention that the consideration paid to Bennion cover "[a]ll medical and other expenses" of Bennion.

¶16 Bennion also relies on the indemnification provision to make his argument. He recognizes that under the indemnification provision, he is "fully liable for all subrogation claims and healthcare liens" and that the $150,000 consideration "obligated [him] to use this finite allotment of funds to resolve all outstanding liens and potential claims." But he argues that where the "entire thrust" of the settlement agreement was to release Stolrow from liability and make Bennion responsible, then the plain language somehow "does not permit" the issuance of the checks as done by State Farm. But again, we see nothing in the plain language of the indemnification provision that disallows the inclusion of Rawlings as a joint payee, and moreover, such inclusion seems entirely consistent with the settlement agreement's shift of liability from Stolrow to Bennion.[3]

---

3. Bennion disputes the amount of Rawlings's claim and argues that the issuance of the checks to joint payees undercuts his ability to negotiate a lesser amount with Rawlings. But the district court

(continued…)

¶17 We take this opportunity to recognize that were Stolrow and State Farm, knowing of the Rawlings claim, to issue one check for $150,000 payable only to Bennion, they might expose themselves to liability beyond the $150,000 settlement payment. "A settlement made with the knowledge, actual or constructive, of the injured's insurer's subrogation right will not affect the insurer's right of subrogation as against the tort-feasor or his insurance carrier." *Educators Mutual Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1032 (Utah 1995) (quotation simplified); *see also Transamerica Ins. Co. v. Barnes*, 505 P.2d 783, 787 (Utah 1972). That is, in the event the Rawlings claim remained unpaid,[4] Rawlings would not need to pursue resolution with Bennion at all but could instead bring an action against Stolrow and State Farm directly. And should Bennion declare bankruptcy or otherwise become unable to indemnify them, then the intent of the agreement—that the $150,000 consideration cover all subrogation claims—would not be met.

¶18 In sum, the plain language of the settlement agreement states that the settlement is "subject to" claims like that of Rawlings. We therefore agree with the district court that the payment made by the two State Farm checks was appropriate

---

specifically stated that Bennion "may negotiate the disputed subrogation claim with Rawlings" and did not lock in any certain amount for the Rawlings claim.

4. We note the paradox of Bennion agreeing that he is liable for any amount Rawlings is due but also putting significant cost and effort into appealing the district court's ruling so that he does not have to address and settle that claim just yet. And we understand the suspicion this has created on the part of Stolrow and State Farm that Bennion might not actually intend to resolve and pay the Rawlings claim.

under the plain language of the settlement agreement.[5] And where we see no error in the court's interpretation of the settlement agreement, we also see no abuse of discretion in the court's denial of a motion to reconsider based on an alleged erroneous interpretation.

CONCLUSION

¶19  We determine that nothing in the settlement agreement precludes Stolrow and State Farm from including Rawlings as a joint payee on a check in the amount of its lien to shield them from further liability for the lien. We therefore affirm the orders of the district court enforcing the settlement agreement and denying Bennion's motion for reconsideration.

––––––––––

5. Bennion also argues that the district court's interpretation "improperly attempted to fashion an equitable remedy rather than enforcing the plain language of the contract." Although we do not agree with this characterization of the district court's one reference of an attempt to "balance the interests" of the parties, where our review gives no deference to the district court's decision and our determination does not rely on policy or equitable considerations, we need not address this issue.